Robin L. Cohen (rcohen@kasowitz.com)
Adam S. Ziffer (aziffer@kasowitz.com)
KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
212-506-1700
*Attorneys for Plaintiff Gain Capital Holdings, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GAIN CAPITAL HOLDINGS, INC. | Civil Action No.: |
|                            Plaintiff, | |
| v. | **COMPLAINT** |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | **JURY TRIAL DEMANDED** |
|                     Defendant. | |

Gain Capital Holdings, Inc. ("Gain"), by and through its undersigned attorneys, as and for its Complaint against National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), alleges as follows:

**PRELIMINARY STATEMENT**

1.      This action is for breach of contract and declaratory relief arising out of National Union's unjustified refusal to provide coverage under an insurance policy it sold to Gain.

2.      Gain, an online provider of retail and institutional foreign-exchange trading and related services, is the named insured under National Union Financial Institution Professional Liability Insurance Policy No. 02-420-37-29 (the "Policy"), which specifically provides coverage for "the Loss of the Insured arising from a Claim first made against the Insured during the Policy Period . . . and reported in writing to the Insurer pursuant to the

terms of this policy for any actual or alleged Wrongful Act of any Insured in the rendering or failure to render Professional Services."

3.      Gain was named as a defendant in hundreds of claims in the United Kingdom (the "Underlying Claims") when the British investment firm Cameron Farley Limited ("Cameron Farley"), which had accounts with Gain and traded on Gain's foreign-exchange platform, was determined by British regulators to be a Ponzi scheme and placed in liquidation.

4.      The individuals that had invested with Cameron Farley (the "Claimants") have sued Gain under British securities laws alleging (1) that Gain should have conducted more due diligence on Cameron Farley and was negligent or reckless in that it missed "red flags" with regard to Cameron Farley's suspicious activity which it should have reported to regulatory authorities, (2) that the relationship between Gain and Cameron Farley was sufficiently close to be considered a joint venture or a principal-agent relationship, and thus Gain should stand in Cameron Farley's shoes vis-a-vis the Claimants, and, alternatively, (3) that the Claimants had a direct investment advisory relationship with Gain.

5.      Gain denies these allegations and has retained counsel in the United Kingdom to contest the Underlying Claims.  To date, Gain has incurred substantial defense costs.  The litigation is ongoing, and Gain has yet to be cleared of the allegations against it.

6.      Gain purchased the Policy, and the Policy is designed, to protect Gain against precisely the type of loss it has now incurred as a result of defending the Underlying Claims.  The Policy contains broad definitions of "Wrongful Act" and "Professional Services" that provide coverage, including the advancement of defense costs, for exactly these types of claims arising out of Gain's everyday business providing foreign-exchange trading services to a wide variety of clients.  Yet despite the fact that Gain paid its

premiums, gave prompt notice of the Underlying Claims to National Union, and has cooperated fully and completely with National Union, National Union has failed and refused to pay Gain's claim for coverage under the Policy (the "Claim"). This refusal to pay constitutes a breach of National Union's contractual obligations.

7.      Gain seeks a declaration that there is coverage for the Claim under the Policy and damages for breach of contract due to National Union's unreasonable failure to honor its obligation under the Policy to cover the Claim.

## THE PARTIES

8.      Plaintiff Gain is a Delaware corporation with its principal place of business in Bedminster, New Jersey.

9.      Upon information and belief, Defendant National Union is an insurance company organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in New York, New York. Upon information and belief, National Union is authorized to sell or write insurance in New York and, at all material times, has conducted and continues to conduct substantial insurance business in the State of New York, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in New York.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) because National Union maintains its principal place of business in this judicial district.

## FACTUAL ALLEGATIONS

I.      **The National Union Policy**

12.     In consideration of significant premiums paid to cover exactly the type of loss at issue here, National Union sold the Policy to Gain for the policy period June 30, 2011 to June 30, 2012.

13.     Gain purchased the Policy to provide coverage for liability that could arise from its everyday business dealings, including the services it offered through its platform on which its account holders could execute foreign-exchange trades.

14.     The Policy provides coverage for:

[T]he Loss of the Insured arising from a Claim first made against the Insured during the Policy Period or the Discovery Period (if applicable) and reported in writing to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of any Insured in the rendering or failure to render Professional Services.   The Insurer shall, in accordance with and subject to Clause 8 . . . advance Defense Costs of such Claim prior to its final disposition.

15.     The Policy defines "Loss" as "damages, judgments, settlements and Defense Costs . . . ."

16.     "'Defense Costs' means reasonable and necessary fees, costs and expenses consented to by the Insurer . . . ."

17.     "'Claim' means: . . . (2) a civil or arbitration proceeding for monetary or non-monetary relief which is commenced by (i) service of a complaint or similar pleading . . . ."

18.     "Wrongful Act" is defined broadly as "*any* act, error or omission in the rendering of or failure to render Professional Services; . . . ." (emphasis added).

19.     "Professional Services" is defined in Endorsement #3 as:

[S]ervices rendered or required to be rendered, for compensation, by the Company for any customer or client of the Company in the following designated areas or capacities:

4

1.  Acting as a custodian or depository, or a managing agent for securities or money. . . .

4.  Acting as an investment advisor and/or financial advisor and/or economic advisor and/or investment manager . . . pursuant to a written contract defining the scope of such advice and/or services and the compensation to be paid therefore . . . .  [and]

6. . . .  Foreign Exchange and Commodities trading services.

20.    In Clause 8, the Policy specifically provides that National Union must advance defense costs incurred in underlying claims:  "The Insurer *shall advance*, at the written request of the Insured, Defense Costs prior to the final disposition of the Claim." (emphasis added).

## II.    The Underlying Claims

21.    Cameron Farley was founded in 2004 by Stephen Farley and others and held itself out to investors as an investment manager capable of delivering strong returns through foreign-exchange trading.

22.    Cameron Farley was not at all successful in its trading, and instead of acknowledging losses to its clients, it began functioning as a Ponzi scheme, paying out clients with funds invested by new clients.

23.    Cameron Farley sought out a relationship with Gain and offered to steer the foreign-exchange trading volume created by Cameron Farley and its investors to the Gain platform.

24.    Gain signed various agreements with Cameron Farley in the course of this relationship, including an agreement by which Gain paid Cameron Farley commissions to introduce clients to Gain, and an agreement that established a Cameron Farley account with Gain that allowed Cameron Farley to place foreign-exchange trades with Gain.

25.     While Cameron Farley did occasionally profit from its trading through Gain, for the most part its trades were unsuccessful, and it lost almost all of the money it transferred to the Gain accounts.

26.     UK regulators first investigated Cameron Farley in 2005, suspecting that it was conducting trading and advisory activities without proper authorization.

27.     Eventually the regulators were able to show conclusively that Cameron Farley was providing unregistered investment advice and management and they placed it in liquidation.

28.     As Cameron Farley lost most of its money to unsuccessful trades, there was little money for the liquidators to distribute to investors, many of whom lost their entire investment.

29.     On December 19, 2011, the first Claimants filed a Notice of Claim with the High Court of Justice in the United Kingdom, initiating litigation against Gain.

30.     On February 16, 2012, Claimants' counsel sent Gain a letter enclosing a "Pre-Action Protocol," the next step in the UK litigation process after filing the Notice of Claim.  The letter advised Gain of the facts on which the Claimants would base the Underlying Claims, and stated that Gain had failed to conduct "required due diligence," which, "had it been undertaken, would have revealed, if [Gain] did not know before, that Cameron Farley Ltd was wholly unauthorised . . . ."

31.     Over the next several months, hundreds of other Cameron Farley clients joined the initial Claimants, filing separate Notices of Claim that were consolidated into one action.

32.     The Claimants filed Master Particulars of Claim on April 1, 2014, which, similar to a complaint, lists the factual allegations made by the Claimants and their claims against Gain.

33.     The Master Particulars of Claim alleged that the relationship between Gain and Cameron Farley was sufficiently close to be considered a joint venture or a principal-agent relationship, and that the Claimants had a direct investment advisory relationship with Gain.

34.     On August 6, 2015, the Claimants filed and served Gain with an Amended Master Particulars of Claim that adds further detail to the claims asserted in the original Master Particulars of Claim and also adds a claim that Gain directly violated UK securities laws in its dealings with Cameron Farley.

35.     The litigation is ongoing.

### III.    National Union's Wrongful Denial of Coverage and Subsequent Mandatory Mediation

36.     Gain notified National Union of the Underlying Claims on April 27, 2012, after receiving a second letter from Claimants' counsel discussing the mechanics of serving Gain and formally initiating the underlying litigation in the United Kingdom.

37.     National Union denied coverage on a variety of grounds, including that the Claimants were alleging "Wrongful Acts" by Cameron Farley, not by Gain, and that the Claimants were not "customers or clients" of Gain and Gain did not receive any compensation from the Claimants, thus the Underlying Claims did not fall within the Policy definition of "Professional Services."

38.     National Union also asserted that coverage was barred by policy exclusions for claims related to loans, claims that arise out of in-fact criminal acts by an Insured or anyone for whom the Insured is legally responsible, and for claims that arise out of knowingly committed Wrongful Acts.

39.     The facts of the Underlying Claims allege Wrongful Acts on the part of Gain that satisfy the Professional Services definition in the Policy.  The entire relationship between Gain

and Cameron Farley and Cameron Farley's customers revolved around Gain's rendering of foreign exchange and commodities trading services, for which Gain received compensation. There is coverage for the Underlying Claims on that basis alone.

40.     There is also coverage for the Underlying Claims that assert failure to perform due diligence under the prong of the Professional Services definition for alleged Wrongful Acts as a custodian or depository for securities or money.

41.     Additionally, there is coverage for the elements of the Underlying Claims that allege a joint venture or principal-agent relationship between Gain and Cameron Farley because Subsection (4) of the Policy's Professional Services definition includes acts as "an investment advisor and/or financial advisor . . . and/or investment manager . . . pursuant to a written contract defining the scope of such advice or services and the compensation to be paid therefore . . . ." The Claimants allege Gain should be held liable for Cameron Farley's Wrongful Acts committed as the Claimants' investment advisor and/or manager, advice provided pursuant to written contracts between the Claimants and Cameron Farley.

42.     The exclusions cited by National Union in denying coverage for the Claim do not apply because there has not been any in-fact finding of criminal conduct by Gain, and there is no allegation that Gain knowingly committed any of the alleged Wrongful Acts.  Additionally, while Cameron Farley styled the Claimants' investments as "capital injections" to avoid scrutiny of the UK regulators, both the UK regulators and Claimants' counsel have dismissed that effort as futile and agree that the funds the Claimants deposited with Cameron Farley are best characterized as investments in a collective investment scheme, not loans.

43.     Notwithstanding Gain's effort to advise National Union of these positions, National Union maintained its denial of coverage for the Claim.

44.     At impasse after an exchange of letters, Gain invoked the Policy's Alternative Dispute Resolution Provision and a non-binding mediation took place before a neutral on April 9, 2015.  The mediation was unsuccessful.

45.     By denying coverage when the Claim was covered under the Policy and all prerequisites to coverage were met, National Union breached its contractual obligation to Gain.

## FIRST CAUSE OF ACTION

(Breach of Contract – Duty to Advance Defense Costs)

46.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.     The Policy constitutes a valid and enforceable contract between National Union and Gain because Gain was the named insured under the Policy.

48.     Gain has paid all premiums, provided prompt notice of the Claim, and otherwise performed all obligations required of it under the Policy.

49.     Under the terms of the Policy, National Union must advance defense costs for any Claim first made during the Policy Period and reported in writing to National Union for any alleged Wrongful Act of any Insured in the rendering or failure to render Professional Services.

50.     As detailed above, the facts of the Claim come within the coverage grant of the Policy.

51.     National Union has not paid any amounts to Gain in connection with the Claim. By failing to provide coverage for the Claim, National Union has breached the terms of the Policy.

52.     As a direct and proximate result of National Union's breach of the Policy, Gain has suffered damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

## SECOND CAUSE OF ACTION

(Declaratory Relief – Duty to Advance Defense Costs)

53.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54.     Under the terms of the Policy, National Union must advance defense costs for any Claim first made during the Policy Period and reported in writing to National Union for any alleged Wrongful Act of any Insured in the rendering or failure to render Professional Services.

55.     As detailed above, the facts of the Claim come within the coverage grant of the Policy.

56.     National Union disputes its legal obligation to pay the Claim.

57.     Pursuant to 28 U.S.C. § 2201, Gain is entitled to a declaration by this Court of National Union's obligations under the Policy.

58.     An actionable and justiciable controversy exists between Gain and National Union concerning the proper construction of the Policy, and the rights and obligations of the parties thereto, with respect to the Claim for defense costs related to the Underlying Claims.

59.     Gain is entitled to a declaration declaring that there is coverage available for defense costs related to the Underlying Claims under the Policy, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.

## THIRD CAUSE OF ACTION

(Declaratory Relief – Duty to Indemnify)

60.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.     Under the terms of the Policy, National Union must pay the Loss of Gain arising from any Claim first made during the Policy Period and reported in writing to National Union for any alleged Wrongful Act of any Insured in the rendering or failure to render Professional Services.

62.     As detailed above, the facts of the Claim come within the coverage grant of the Policy.

63.     National Union disputes its legal obligation to pay the Claim.

64.     Pursuant to 28 U.S.C. § 2201, Gain is entitled to a declaration by this Court of National Union's obligations under the Policy.

65.     An actionable and justiciable controversy exists between Gain and National Union concerning the proper construction of the Policy, and the rights and obligations of the parties thereto, with respect to the duty of National Union to indemnify Gain up to the applicable limits of the Policy for all Loss, including judgments or settlements, related to the Underlying Claims.

66.     Gain is entitled to a declaration declaring that there is coverage available for all Loss, including judgments or settlements related to the Underlying Claims, under the Policy, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

11

      (a)     On the First Cause of Action, Plaintiff requests that the Court enter judgment against National Union, awarding Plaintiff damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

      (b)     On the Second Cause of Action, Plaintiff requests that this Court enter a declaratory judgment in favor of Gain against National Union, declaring that National Union is obligated to pay Gain, up to the applicable limits of the Policy, for defense costs related to the Claim;

      (c)     On the Third Cause of Action, Plaintiff requests that this Court enter a declaratory judgment in favor of Gain against National Union, declaring that National Union is obligated to pay Gain, up to the applicable limits of the Policy, for all Loss, including judgments or settlements, related to the Claim; and

      (d)     Additionally, Plaintiff requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: New York, New York          KASOWITZ, BENSON, TORRES &
       August 11, 2015             FRIEDMAN LLP

                                   By: /s/ Adam S. Ziffer
                                       Robin L. Cohen (rcohen@kasowitz.com)
                                       Adam S. Ziffer (aziffer@kasowitz.com)

                                   1633 Broadway
                                   New York, New York 10019
                                   Tel: (212) 506-1700

                                   *Attorneys for Plaintiff Gain Capital Holdings,
                                   Inc.*